Good morning, Your Honors. Stephen Schmidt appearing on behalf of the appellants, the Jensens. If it may please the Court. Mr. Schmidt, can you kind of frame this for me? What was this? This was a piece of property that was being used as a junkyard? No, it wasn't, Your Honor. And that's the problem here, is that the county does not have any ordinance prescribing junkyards, number one. All it has is a definition of what it considers maybe a junkyard. Well, these were a lot of cars that were inoperative. Excuse me? These were a lot of cars that were inoperative. A lot of them were, but according to testimony of Mr. Jensen, only about 25% were inoperative. But that's not the issue, Your Honor, whether or not it's a junkyard. The issue is whether or not... Just trying to figure out what it is, that's all. Well, no, it's not a junkyard. As verified by the testimony of both Jensens, this is a longstanding use of this property. We're talking about 18 acres in rural Sonoma County. Mr. Jensen has a racing hobby, as did his father before him, as did his grandfather. They also have a car collecting hobby, which millions and millions of people in the United States have. And to call these, quote, junkyards, then, as I tried to illustrate by the pictures attached in the reply brief, everything is junk that's rusty, and that's not the case, as Judge Kleinfeld recognized in the Ninth Circuit opinion that I cited in the opening brief or in the reply brief as well. The bottom line here is not whether it is junk or not. The bottom line is whether or not the county ordinance gives due process notice required by the 14th Amendment as to what is prescribed. It does not do that. They have not been able to point to one ordinance that says thou shall not have inoperative vehicles on thy property. They have not been able to cite to one ordinance that says thou shall not have race cars on thy property. The fact of the matter is, is that it's a well-recognized hobby. Yes. Kagan. Counsel, would you have, then, the county list every possible thing that is not allowed by the county or would be of concern for the county? I mean, is that your position as to why this would be, I guess, unconstitutionally vague? I mean, is that what you would expect to see? Your Honor, the answer to that is no. Although I think the law should be, I think the law has gone to the other stream, but that's more a philosophical argument. But I recognize that the courts have recognized that a certain latitude that's allowed with reference to these ordinances. But as I point out, maybe not clearly enough, but I try to, is that the ordinance clearly allows for an ancillary use of this property. And there's no question, as is amplified in the record, that at least 25 percent of people in Sonoma County have outside storage of, quote, abandoned vehicles or inoperative vehicles. I live in Sonoma County, and every neighbor of mine has them around. I live out in the rural part. It's custom and practice there. So to suggest, without a trial on that issue. I'm sorry. What's custom and practice? To have outside storage of inoperative vehicles. That's just, I mean, you cannot go down any street in rural Sonoma County without. Yeah, but if a county has a, in this instance, I guess, environmental concerns that was mentioned by the county representative during the hearing, why isn't that sufficient to justify the counties not allowing the outdoor storage of inoperative vehicles? But it doesn't do that, Your Honor. That's the fundamental issue. They do not have an ordinance that says that. If they did, I wouldn't be here, Your Honor. I'm not. But that's my question. Do you think they have to have an ordinance for every possible prohibited item that might adversely affect the environment? Well, they should at least, at the very least, have put people on notice saying that if you're storing stuff that has an effect on the environment, then thou shall not do that. What does the ordinance say? It doesn't say it. That's the problem. I'm asking you. What does it say? The ordinance says, the ordinance they rely on says residential, rural residential, okay? It lists umpteen, about 20 various things that you're allowed to do. I'm sorry. Which ordinance are you referring to? I'll stop there. I don't know the code number, Your Honor. But it is, and counsel probably know that better, but it lists like 20 items that are allowed, including ancillary use, but not listed on that, in those 20 items, is that you can have a rose garden, that you can have ducks in your pond, that you can have a pond period, or that you can ride your go-kart on a track outside. There's umpteen things that are not listed that are allowed. And more importantly to this, and relevant to this case, Your Honors, is the fact that the code enforcement head testified that, in fact, under the ordinance, people can have vehicles on their property and can have them outside. He said you can have 200 vehicles on the property. But this is a complaint-driven enforcement. And that's your real complaint about this, right? I mean, this is a big argument, that it's complaint-driven enforcement. But it's complaint-driven. I would reduce it to three. Yeah. I'm sorry. Go ahead. I don't want to cut off the Court. But I agree that's one of my fundamental problems with the enforcement, is this is irrational and capricious, in that you have the code enforcement literally driving down the street and shutting their eyes to what my client's neighbors are doing, that at least 25 percent of the people in Sonoma County are doing. They do not write them up. But if Mr. Jensen has an ex-employee or some ex-girlfriend or an ex-wife who has a problem with him, they can do it, rat him out and say, oh, you've got cars on your property. And the code goes out and arbitrarily enforces that, whereas the neighbor right next door, they don't do that to. Well, but the county has limited resources and they have to have rational basis. Right. And that's not rational in my book. Well, I understand that's your opinion. But based on the record, they do seem to offer these environmental concerns, among other things, as to why the county is not allowing this outdoor storage of inoperative vehicles. But they haven't done that, Your Honor. With all due respect, they cannot point to a section that says that. If they had a code that said that, I wouldn't be arguing, honest. But they do not have a code section that says that. To the contrary, their code enforcement officers, you can store outside up to 200 vehicles. But that's why I go to my question. I think I asked just moments ago, do you think it's practical or even possible for the county to outline all of the things that are not permitted? Well, I think it is practical in this modern area. In fact, in the modern era, it is. In the olden days, it might have been more cumbersome. But at the very least, if they have this unannounced, as I pointed out, this unwritten policy that says Joe Schmoe can have 200 cars on his property, which he cannot. And that's on the record. Then why can't my guy have 200 cars on his property? But if that is, in fact, their interpretation of this unwritten code, then at the very least, in a modern society with the Internet and easy, you know, composition of writings, we can reduce that to writing and posting on the Internet. As a matter of fact, the Ninth Circuit decision just came down recently where the Ninth for not having electronic filing. I mean, and it was cited in that case, they said, look, we're not living in the 19th century anymore. We're not living in the 20th century anymore. We're living in the 21st century, and you got to you should be able to use technology and techniques that are available in this century. I think it's very strange they cannot cite to one writing that says my client cannot do this on his property. They can't cite to it. Counsel, though, I'm looking at the findings now of the decision administrative order from the County of Sonoma, and they have referred to Chapter 26 generally of the Sonoma County Code. Right. And they've cited you for a violation of junkyard conditions, nonoperative motor vehicle storage yard, and other things. Right. And in Chapter 26, in 26-02-140, there is a description of junkyard and nonoperative motor vehicles. Right. But it doesn't describe it, Your Honor. That's a definition. It's like saying there's a definition of toilet in the codes. I mean, and there probably is in their code what type of toilet you can use on your property. Your contention is although we have a definition of junkyard and nonoperative motor vehicles, that the problem is, is that in the ‑‑ that there's no prohibited use section that then refers back to that section? Exactly. And more fundamentally ‑‑ Prohibited uses, but not a prohibited use. Yeah. But more fundamentally, Your Honor, is that they acknowledge that you can have vehicles on your property. No one proves that these were junk vehicles. In fact, to the contrary, it was well recognized that a lot of these were very, and they are, collector's items. I mean, and just because, and I tried to show that by a picture. Look at that John Deere in my reply brief. The county would haul that thing off as scrap. And I can represent to the court that thing is worth $200,000, the way it was in scrap form. I'm sorry. But the point is, so my point is ‑‑ I saw those pictures in the brief. Yeah. I just want to make sure. That's not on the Jensen's property. No, no, no. No, it isn't, Your Honor. The buddy who took a John Deere. And that's a before and after? Yes. But it's just a representative. And in fact, I could have probably taken some for my clients, but I didn't have it part of the record. But he's restored them over the years. But I don't want to, you know, I really don't want to get bogged down in the sense that they make this accusation as a junkyard. Okay. Can prove it's a junkyard, but also show that where is it prohibited? But when they admit that you can have a hobby of collecting cars, and I can cite, and I was able to cite case law that recognizes that a hobby of collecting cars is part of an ancillary use of residential property, at the very least, and they, my client has to be put on notice that at some point he's crossed the line. But when the zoning enforcement officer, the head guy, Mr. Newman, gets out and says, yeah, you can have cars on your property. You can have up to 200 cars on your property. You know, following your rationale, you could have a full-blown junkyard. And when the ordinance people show up, the ordinance enforcement people show up, and they say, yeah, I actually, I collect headlights. I collect steering wheels, axles. I love broken tail lamps, and I collect those, too. Well, yeah, and then that becomes an evidentiary thing, Your Honor. Did they get a hearing? Yeah, they got a hearing, but there's no finding that it's junk. She, you know, it's just, the bottom line is, is that you cannot, and the fact of the matter is people do collect those sort of things. And I also got the, Mr. Newman to recognize that, for example, people collect antique gasoline pumps, Your Honor. You see them all throughout Sonoma County. That would all be great, except the problem here is that the county ordinance is aimed at the difference, the distinction they draw between operative vehicles and inoperative vehicles is that inoperative vehicles, like inoperative machinery of all kind, has a tendency to leak things like, because they're not maintained, oil. Yeah, I understand the court's point, but number one. Anybody that's lived, that has an older car, that's parked it in a garage or gone into any parking garage in the city of San Francisco will see big puddles of oil sitting on the ground in parking spaces where even cars that are operative, but barely operative, will leak oil. I understand the Court, Your Honor's point on that, but that doesn't change the scenario here, because the ordinance doesn't prohibit inoperative vehicles versus operative vehicles. In fact, if my guy had a, put a historic vehicle sign, a license plate on his inoperative vehicle, he could be sitting on the property dripping oil up the walls. But it doesn't, I think their position is it prohibits environmental hazards. Fine, Your Honor. If that was their position. And they made the conclusion that that's what you've got. No, no, there's none, there's none, there's no evidence of that whatsoever. It was never brought up. And believe me, if they could find that, they would have brought it up. And that was a post, with all due respect, Your Honor, that was an after-fact justification for this ordinance. The bottom line is all these ordinances came out as a result of Lindenberg-Johnson way back in the early 60s, where she went on a national campaign to clean up along the highways. And so there's a big campaign against, quote, unquote, junkyards. And as a result, that's what, it had nothing to do with any concern about the environment at that time. It's purely a visual thing. I just want to, your time's almost up. And I want to ask you just a couple other quick questions. You state in your brief that you were penalized for requesting a hearing. But did you actually request a hearing? I'm not sure what your response, but we definitely got, we asked. We never asked for a hearing, but we got a hearing. Right. But you're saying that you were penalized for requesting a hearing. But the hearing was set by the county when you failed to, or your clients failed to respond to the notices. Is that correct? I understand the Court's question. And the way the penal, and I'd really like to address that, because I think with all due respect to Judge Sparrow, whom I really admire and appreciate as a judge, he totally got that wrong, because he said, well, basically, no, they could have, they were penalizing them for not acting promptly. But the whole point is, is due process allows you to sit back and let the State. Sir, my question's different, just a little bit different. Okay. Wasn't the hearing set by the county? Yes, it was. All right. So you didn't actually request the hearing. I'm just trying to figure out your claim here, because didn't the notices give you the option to have an appellate hearing, but you did not request such a hearing, correct? Because you don't have to. Under the way the ordinance is written, you can sit back and they cannot take any action until they actually hold a hearing. So you couldn't have been penalized for requesting a hearing since you didn't request one, correct? No, but we were penalized for exercising a right to have an opportunity and to be heard. My client did not have any obligation to do anything until there was a hearing. So your argument is basically that you were penalized for not just confessing the mistake initially and doing whatever the county wanted to do, to have you do, versus saying, no, we didn't do anything wrong, and that triggered the hearing. That's your argument, right? Well, in part, Your Honor, yes. But the real problem is my clients were exercising their due process right to have a hearing and opportunity to be heard. It's incumbent on the county under local ordinance and under 14th Amendment law that they be given notice and opportunity to be heard. And under the way this local ordinance is, the county has to set up the hearing. So they're waiting for this hearing, as was their right. And the county, in turn, turns around and says, we're going to penalize you for exercising your due process right, which is a subset of the First Amendment right, since the First Amendment includes the right to petition. And that's the argument on the First Amendment. Isn't this a little bit like when somebody pleads guilty and they admit their responsibility, they get a downward adjustment for acceptance of responsibility, but if they go to trial and they deny their responsibility and they get convicted, they get their full sentence? I mean, you know, the law is pretty clear that that's not they're not being penalized. That argument was made because they went to trial. They're just not getting a benefit by confessing their liability. But this is pre-this is they're being penalized prior to any hearing and prior to the assessment of any strike-up. Now you're talking about you're being penalized after the fact. In other words, the judge takes into account what you did before. Here, they penalize you before the fact, before there's any hearing. How is that? I mean, you alleged that the county increased your penalty for seeking a hearing, but other than your allegations, what's the actual evidence of that? Well, I have Excerpt 135, which says diligence and cooperation of the violator slash owner. And they weighed it. Delayed response, 10 percent, 10 points. And that's the highest weight that you can get under this particular. Isn't that quite similar to what I exactly just told you? Somebody who accepts their responsibility, avoids having the county go through the expense and the difficulty of litigating the matter? Yes, except the fact is that you have the judge making that determination after. This is in advance of the fact. They say the penalty goes up before you have the hearing based on your conduct. In other words, you have a – not to be pejorative, but you have a bureaucrat acting and making a determination, hey, you're going to be penalized more because you didn't kowtow to me and take all these cars off the property. But my clients had a good faith belief that they had a right to have them on the property, and accordingly, they had every right to proceed to a hearing. They should not be penalized for, quote, unquote, delaying when all they're doing is exercising their constitutional right under the Due Process Clause, which is, I argue, is a subset by definition of the First Amendment since you have a rights petition. Well, I'm just trying to figure out the mere fact that the penalty gives a score based on delay, cooperation or diligence. Right. And I'm just wondering if that's sufficient without anything else for this retaliation claim to survive summary judgment. I'm just wondering. Well, I wouldn't say it as a – I don't say it as a retaliation claim per se, Your Honor. What I say it is as a First Amendment. In other words, there's a chilling in the First Amendment right. In other words, your average Joe Blow, they say, look, if you don't clean – and this is what the notice says. If you don't clean this up, you're going to get hammered for more and more. And that – and that shouldn't be. I mean, you should – everyone should be afforded their hearing, right or wrong, whether you think you love or hate junkyards or whatever you want to call them. My client should not be penalized before – for conduct until they have a hearing. If at the hearing they make a determination they're penalized, then fair enough. Then you've had your hearing. You had the opportunity to be heard. But for someone to ascribe and increase the amount of penalty prior to a hearing is just fundamentally unfair and unjust. And just, you know, clearly chills your First Amendment rights. And that's just not tolerable. Even – I mean, this – and part of the problem is with all of this – You're well over your time. Thank you. Sorry, I wasn't paying attention. I'm going to allow you one minute for rebuttal. I appreciate that. Thank you, Your Honor. Ms. Freeman. Thank you, Your Honor. And may it please the Court, Bonnie Freeman, and I am appearing on behalf of the County of Sonoma, the respondent here. There are just a couple of, I think, factual issues that I can clarify right off the bat. Mr. Jensen did testify in the underlying hearing with the hearing officer that he thought perhaps 20 percent of what was being contained on his property was operable, not that 25 percent was inoperable. And you can tell from the photos that are part of the record the type of materials that we're talking about that has been characterized as racing hobby and something else, racing hobbies and car collection hobbies. The other issue I wanted to clarify on the record was that Mr. Schmidt, I believe, characterized the zoning here as rural residential, and it is not. It is diverse agricultural. And the record is clear that this property is zoned diverse agricultural and that the county does have an interest in protecting the environment from exactly what Your Honor has pointed out. I want to comment on, first, on the penalty issue that you raised, Your Honor. There is no evidence in the record that shows that the penalty that was ascribed by the hearing officer was related to the fact that a hearing was required, ultimately, after over a year had gone by between the time the county first sent a courtesy notice to Mrs. Jensen, the property owner, in December of 2006. The abatement notice, which requested that the conditions be abated within 30 days, was sent in March of 2007, and the hearing came much further after that in 2008. So there are many things that property owners can do if they wish to challenge the findings of the PRMD. And in this case, a property on which there are several tow trucks present, what you can do is abate the nuisance and challenge your right. You can clean the property up, store it in somewhere that is designated for automobile storage, something that is zoned for commercial storage, truck storage. You notice from the record there were 18 or so Yardbirds moving trucks that are apparently related to this car hobby and racing hobby. And so what you do is you abate the nuisance, and then you challenge your rights. If that is what you choose to do. But the penalty is simply based upon the penalty calculation sheet, which is at page 135. And there are three options there. Either you cooperated and you quickly responded and acted with diligence, which could have happened here, or you responded after numerous attempts, and they ascribe five points to that, or the violator or owner delayed a response. There's no evidence in the record that it was related to the fact that they actually went through a hearing process. Scalia. I'm sorry, Judge. Kagan. I don't think your brief responded to the Jensen's allegations that the penalty calculations, calculation violated their due process rights. Do you have any response to that claim? I actually referred back to the trial court's finding that there had been no evidence to support their allegation that the penalty was enhanced simply because they waited until the hearing, the abatement hearing finally took place. And there was no legal response to that because there was no law provided in the brief at the summary judgment stage or which Magistrate Spiro could find to support their claim that that was a due process violation. I think his argument is a little more fundamental. I think his argument is that it is, or we should find it to be unconstitutional that any penalty can be imposed until there is a finding, say, from the board itself, wherever the appeal is taken, that they are in violation, and then if they fail to clean up after that, then they can get penalized, but that they can't get penalized for having had some sort of zoning violation prior to there being a determination because then they're alleging they're being deprived of their right to a hearing and they're being penalized before they have their hearing. That's the argument they're making. I understand the argument. And, again, I would point out that there hasn't been any evidence that that occurred in this case, and there hasn't been any law authority cited to support the proposition that it would be. Well, there is evidence. I mean, they got the letter, and they're being penalized because they didn't cooperate. Cooperate with the letter. Correct. Right. Correct. And so they are, in effect, being penalized because they didn't clean up. But I think the the, it appears the argument to the contrary is that it's a little bit like you get a tax assessment, and then you have to pay it, and then you challenge the tax assessment later for a refund. Right. And in the meantime, you don't get to not pay it. Well, if you decide not to pay it while you're challenging it, you incur the penalties. You incur penalties. Substantial penalties. So it would be analogous. I want to comment on the spot zoning argument, which appears to be, it seems that the appellants are asking the court to find that any complaint-based enforcement procedure that a municipality may have to adopt or may adopt for whatever reason is a per se spot zoning violation, and therefore imposes on somebody's constitutional rights. And the law defines spot zoning in a very particular way. It has been recognized as typically invalid and unreasonable when applied, and it is found where their small parcel is restricted and given less rights than surrounding properties are given. And the trial court cited to the case of Ross v. City of Yorba Linda, which is a classic discussion of what spot zoning, excuse me, what inappropriate spot zoning amounts to. And in this case, well, in Ross, you had a situation where there was one parcel that was being singled out and was being restricted from development in a way that most, the majority of the surrounding parcels had been able to develop, and that was to build based upon the size of acreage. And this particular parcel had just over one acre. There were other parcels that had two buildings for each half acre. When they submitted their plan to build a second home on the same parcel, they were denied that right, and the city said, no, we want to restrict urbanization of this area. And the court found that that was a very specific instance of spot zoning because the surrounding parcels were all being treated differently than this particular parcel. Here, we have no evidence that the Jensen parcel is subject to any restrictions that are not restrictions on any other parcel. It appears that their claim is they're being singled out because a complaint was made by someone in the community. And that is not an example of spot zoning. And if it were improper for a county or any type of municipality to not rely on a complaint-based system, the imposition, of course, on the municipality and the Public Works Department and the PRMD would be huge because now you're forced to send people out, find these violations, and start enforcing them left and right, and really they might not ever come into issue. Now, this is a pretty serious violation, and it's probably apparent why a complaint was ultimately made. I think his argument is that let's say that there were similar, and there probably are similar, situations in Sonoma County somewhere. I mean, Sonoma County is a big county. I've driven through there. We're off on some rural road somewhere. Somebody's got a whole bunch of junk cars and a whole bunch of junk trailers and junk trucks and all kinds of junk farm equipment just rotting there, but nobody's complained. So they get to continue on with their activity because the county is essentially unaware of it and nobody's complained, which is very different than a situation where somebody might have complained about that parcel, complained about the Jensen's, and they took action on the Jensen's. Correct. Correct. And at this point, what we're talking about is happening on other parcels throughout the county is, of course, completely hypothetical. You're right. We can imagine that that is happening in a rural county and in several places, but the fact is there is no evidence anywhere in the record of an instance where a complaint was made about a similar situation such as this and that the PRMD took any different action or that a hearing officer took any different action. And so to the extent that we are looking to that as an equal protection violation, we simply do not have the apples-to-apples comparison that would be in the Squaw Valley v. Goldfield case where, you know, you have to have the evidence that, look, this governing body acted this way on this day for this parcel, and yet it cannot justify why it acted a different way, similar situation, similarly situated people who appear to have been singled out. And once you get to that point, then you look at whether or not there was an   We're trying to get to that point here. Let me ask you about the claim, I think, that you raised, Section 1983, claims being barred because of res judicata based on Miller v. County of Santa Cruz. Does the fact that the Jensen's sought a writ of mandate in the district court mean that Miller v. County of Santa Cruz doesn't apply here? It was an issue that we argued with Magistrate Spiro quite extensively down below because, interestingly, you can look to Miller and say they didn't attach a CCP 1094.5 cause of action, therefore it's distinguishable. And then you can look at the cases in the northern district that have decided to undertake an administrative review pursuant to that code section when it is attendant to a Section 1983 claim that appears to be sort of inextricably entwined. My point is that there has not been an analysis by the district court opinions that Magistrate Spiro relied upon, or significantly in other Ninth Circuit cases that has said, you know what, the Federal court really doesn't have an interest in administrative mandamus proceedings that originate from localities within the State of California. And we really need to look at the justification behind why we would accept that in the first instance. I think it's been assumed that it can be accepted and reviewed when it is a supplemental jurisdiction issue. However, I still believe that when you read Miller and you read Briggs, I cited in my brief, I'm sorry, the full name of the case is escaping me, the Briggs case, that administrative mandamus proceedings are unique. They have their own unique procedures that are set forth in the statutes and in the government code. And if you accept jurisdiction just simply as a matter of course, as a matter of supplemental jurisdiction, I don't know that the reasoning behind that necessarily applies. It may be an issue that really should be reserved to State courts. And the reference to the California Constitution that says that superior courts are the courts where those are to be heard. Kagan, did you argue as younger abstentions kind of what you're arguing? A little bit. But you didn't, did you? We did, yes. Straight on argue that down below? I did, yes. I did. And actually, as I was preparing for this hearing, I noticed that we did not include in the record here the motion to dismiss proceedings, which actually really focused on that issue. I re-raised it in the summary judgment proceeding because Magistrate Spiro denied my motion to dismiss on that basis without prejudice, allowing me to raise it again in the summary judgment proceeding. But unfortunately, I did not include those papers in the record. They were not included in the excerpt. Let me ask you. Do you know what's happening at the State level now with respect to this? Nothing. If the State court decides to remand the Jensen's case for a new county hearing, what happens? Did the district court rule prematurely? Well, the district court simply said I'm not going to retain jurisdiction of these matters. There's going to be an issue about whether tolling is going to apply, and I believe we may get into the same battle. I'm talking about the tolling of the statute of limitations in which to bring the administrative writ. I see that my time is up. But also we'll get into the issue of how many of the issues raised in the administrative writ proceeding have now been fully litigated. They are all constitutional issues. They have been fully litigated now in the district court and on appeal, and whether or not the Jensen's would be then barred from relitigating anything related to the constitutional claims in the administrative writ proceeding. If they have other issues that they did not raise regarding the administrative writ proceeding that were not constitutional in nature, I suppose that those would go forward in that type of proceeding. Thank you. Mr. Schmidt, you have one minute. Briefly on the issue of the First Amendment, the whole idea that he can be penalized or my clients can be penalized before a hearing is just so contradictory to the whole existence of our nation that I don't even believe that we have to argue that point. You, Your Honor, you raised the issue of tax assessment. That has been the one and the only exception that's been raised. But everything else, and I cite that Goodwill property case, the United States Supreme Court case, in which the Supreme Court has made very clear that with minor, minor exceptions, you cannot impose any sort of or extract property from people or impose penalty on people without first due process. And there wasn't any due process when these penalties were assessed. And if the Court were to look at page 202 of the record, it says that that power is vested in the code enforcement officer to vest this on his own or her own. Counsel, you've used your time. Thank you. Thank you. We thank counsel for the argument. And with that, the case is submitted. We've completed the oral argument calendar for the day, and the court will stand in recess until tomorrow. All rise.
judges: Ezra, Bybee, Murguia